UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        Case Nos. 3:25-cr-00337-YY

    v.

TRACY MOLINA,                 OPINION AND ORDER

        Defendant.

YOU, Magistrate Judge.

Defendant Tracy Molina is charged with three class C misdemeanor offenses for her alleged failure to comply with the lawful directions of a federal police officer or other authorized individual in violation of 41 C.F.R. § 102-74.385 at the U.S. Immigration and Customs Enforcement facility ("ICE facility") on July 20, July 28, and August 22, 2025. Defendant has filed a motion for jury trial, which is denied for the reasons explained below.[1]

The Sixth Amendment reserves the right to a jury trial "for prosecutions of serious offenses[.]" *United States v. Wallen*, 874 F.3d 620, 625 (9th Cir. 2017) (internal citation omitted). In determining whether an offense is serious, courts primarily consider the maximum penalty attached to the offense. *Id.* "Any crime punishable by a prison sentence of more than six months is serious, triggering the Sixth Amendment right to trial by jury." *United States v.*

---

[1] Defendant has two pending cases: No. 3:25-PO-00391-YY and No. 3:25-PO-00511-YY. Defendant has filed identical motions for a jury trial in both cases. For ease of reference, citations in this order refer to filings in the first case, No. 3:25-PO-00391-YY.

1 – OPINION AND ORDER

*Clavette*, 135 F.3d 1308, 1309 (9th Cir. 1998). Alternatively, "[a]ny offense punishable by a prison term of six months or less is presumed to be petty." *Id.* "The maximum period of incarceration is not the only relevant form of punishment, but it is the most important." *United States v. Stanfill El*, 714 F.3d 1150, 1152 (9th Cir. 2013).

A defendant can overcome a petty offense presumption "only when the additional authorized penalties are so severe that they clearly reflect a legislative determination that the offense in question is a serious one." *Id*. at 1152-53 (quotation cleaned up). "In performing this analysis, only penalties resulting from state action, *e.g.*, those mandated by statute or regulation, should be considered." *Blanton v. City of N. Las Vegas, Nev.*, 489 U.S. 538, 543 n.8 (1989). Additional punishment may be sufficiently severe to overcome the presumption where it involves the "imposition of a very large fine, or a very long period of probation, or the forfeiture of substantial property[.]" *United States v. Ballek*, 170 F.3d 871, 876 (9th Cir. 1999).

Here, defendant is charged with violating 41 C.F.R. § 102-74.385. Individuals found guilty under this regulation "shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both." 41 C.F.R. § 102-74.450. In *United States v. Stansell,* 847 F.2d 609, 611–12 (9th Cir. 1988), the defendants were similarly charged with violating 41 C.F.R. § 101–20.304, the predecessor statute to 41 C.F.R. § 102-74.385.[2] The Ninth Circuit held that, where the punishment for such an offense "falls far below the standards for a serious offense, the defense is properly deemed petty," and the defendants were not entitled to a jury trial. *Id.* at 612.

---

[2] Like 41 C.F.R. § 102-74.385, 41 C.F.R. § 102-74.450 states:

> Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the direction of Federal protective officers and other authorized individuals.

*Stansell*, 847 F.2d at 612.

2 – OPINION AND ORDER

The court further observed that "[i]t has been a common practice to have bench trials for cases under section 101-20.304, even when the first amendment is undoubtedly implicated." *Id.* at 612 n.3 (collecting cases); *see also United States v. Pearl,* 3:25-cr-00280-JR, 2026 WL 353358, at *3 (D. Or. Feb. 9, 2026) (holding the defendant was not entitled to jury trial for violating 41 C.F.R. § 102-74.385 "[i]n the absence of lengthy probation periods, excessive fines or forfeiture of substantial property" and where the "defendant fails to show extenuating circumstances that would trigger a jury trial"); *United States v. Cruscial*, 3:18-cr-00465-JR, 2019 WL 1087150, at *7 (D. Or. Mar. 7, 2019) (same).

Defendant argues that a violation of 41 C.F.R. § 102-74.385 is sufficiently serious to warrant a jury trial because the "offense charged was drafted by the executive, rather than the legislature." Mot. Jury Trial 10, ECF 44. Defendant also observes that the current "executive considers the offense serious" by characterizing the "protesters at the ICE facility are serious criminals" and the protests as "a form of rebellion." *Id.*

Defendant's argument is unavailing because, despite whatever rhetoric the executive branch has used to characterize protest activity at the ICE facility, it is Congress, not the executive branch, that established the penalties for this offense. The regulation at issue was promulgated pursuant to 40 U.S.C. § 1315, in which Congress delegated authority to the Secretary of Homeland Security to promulgate regulations in consultation with the General Services Administration ("GSA"). *United States v. Moriello*, 980 F.3d 924, 932 (4th Cir. 2020). While Congress delegated regulatory authority, it limited GSA's power by specifying "that the rules must be 'for the protection and administration of property owned or occupied by the Federal Government and persons on the property.'" *Id.* at 933 (quoting 40 U.S.C. § 1315(c)). Congress also limited the penalty to "reasonable penalties" of "'not more than 30 days' in prison

3 – OPINION AND ORDER

and fines in the amounts allowed by Title 18." *Id.* at 932. These specific limitations show that the legislature did not intend for a violation of this regulation to constitute a serious offense.

Defendant also contends that the executive branch has imposed an additional penalty on this offense through the "looming threat of a 'domestic terrorist' designation." Reply 3, ECF 29. Defendant argues that this designation may then lead to her being investigated as a domestic terrorist and placed on an FBI watchlist, which could have lifelong implications. *Id.*; Mot. Jury Trial 11, ECF 24. But the fact is that defendant is not being charged as a domestic terrorist.[3] She is being charged for failing to obey the lawful directions of federal law enforcement officers. Her concerns are merely speculative, and the regulation at issue does not impose any additional penalties that would support such concerns.

Defendant's reliance on *Fallen v. United States*, 290 A.3d 486 (D.C. 2023), and *Bado v. United States*, 186 A.3d 1243 (D.C. 2018), is also unpersuasive. Reply 3, ECF 29. In both cases, the defendants were charged with misdemeanor sexual abuse of a minor. In *Fallen*, the court held that the statutory requirements under the Sex Offender Registration Act, which included ten years of sex offender registration and community notification, constituted a "severe penalty" and "powerful evidence that the legislature views misdemeanor child sexual abuse as a serious offense," thus "triggering the right to a jury trial." 290 A.3d at 489, 499. In *Bado*, where the defendant was a noncitizen, the court held that the "penalty of deportation" was "comparable to a prison sentence of more than six months," thus entitling the defendant to a jury trial. 186 A.3d at 1257. In both cases, the courts emphasized that statutory penalties reflected the legislature's

---

[3] Defendant cites to multiple statutes related to terrorism, including 6 U.S.C. § 124h-1 (threat information sharing within the Department of Homeland Security); 6 U.S.C. § 1137a (law enforcement training related to terrorism); and 18 U.S.C. § 2331(5) (defining "domestic terrorism"). Reply 3, ECF 29. However, defendant is not charged under any of these statutes.

determination that the offenses were serious. *Fallen*, 290 A.3d at 499; *Bado*, 186 A.3d at 1258.

Here, plaintiff's contention that she will be penalized by being designated a domestic terrorist is

not analogous because it is neither mandated by statute nor an actual penalty flowing from a

conviction under 41 C.F.R. § 102-74.385.

Alternatively, defendant urges the court to exercise its discretion to grant a jury trial.

There is little case law to guide the court's discretion in ordering a jury trial for a petty offense.

In *Cruscial*, the defendants faced similar charges arising from protest activities at the ICE facility

in 2019. The defendants argued that their case presented a "matter of public interest," which was

"[t]he overarching factor" and "central to the Court's decision." 2019 WL 1087150 at *6. They

also argued that their First Amendment rights weighed in favor of a jury trial. *Id.* In ruling on the

motion, the court recognized that caselaw "indicate[s] a jury trial for a petty offense may be

appropriate under highly unusual or unique circumstances." *Id.* at *6. However, the court

declined to exercise its discretion to order a jury trial, noting the defendants "have not shown that

the facts of this case warrant divergence from the general rule providing for bench trials of petty

offenses." *Id.* at *7. The court observed that federal misdemeanor charges against protestors were

"common," "no novel questions" had been presented, and the defendants were prosecuted by

information, not indictment, i.e., there was nothing unusual about how the charges were brought

against them. *Id*. Also, the court found that "permitting a jury trial for a petty offense

predominately based on the likelihood of local media attention is neither practicable nor

consistent with notions of fundamental fairness." *Id.* at *6 Similarly, in *United States v.*

*Mumford*, 3:17-cr-00008-JCC, 2017 WL 652449, at *2 (D. Or. Feb 16, 2017), the court declined

to exercise its discretion to order a jury trial where the defendant argued that the case was in the

public eye, prosecuted out of vindictiveness, and unusual in that it involved the prosecution of a

5 – OPINION AND ORDER

defense attorney who was "tackled, taken down, and tazed in the midst of his making an argument to a federal judge on his client's behalf." *See* Opp Govt's Mot. Bench Trial 3–4, ECF 14.

In less than a handful of written decisions, judges in other jurisdictions have exercised their discretion to order a jury trial. In *United States v. Greenpeace, Inc.*, 314 F. Supp. 2d 1252 (S.D. Fla. 2004), the government indicted Greenpeace for boarding a vessel before arrival under 18 U.S.C. § 2279. The court found the circumstances warranted a jury trial because the case was "unusual" and "would benefit from a jury's collective decision-making." *Id*. at 1264. The court observed the defendant was charged with a criminal statute that had "been gathering dust for over a century," it was rare to pursue criminal charges against an advocacy organization for "conduct having to do with the exposition of the organization's message" (especially given a prior statement by a high-level Department of Justice official that it did not "go after [advocacy] groups" and instead prosecuted "people who commit criminal conduct"), and there were claims that the prosecution was politically motivated due to organization's criticism of the then-president's environmental policies. *Id.* In sum, the court concluded this was not a "run-of-the-mill" misdemeanor case and more appropriate for a jury trial, given juries "better embody and represent the judgment of the community." *Id*.

In *United States v. Rodriguez*, No. 1:10-cr-120-MHW, 2010 WL 11531202, at *1 (D. Id. Oct. 15, 2010), the court found the case was not a "run-of-the mill petty offense of assault" where it arose out of an officer-involved shooting in which the defendant was wounded and hospitalized and the driver of the car was killed by the officer. By contrast, in *United States v. Camas*, No. 24-cr-00513-PHK-1, 2025 WL 1207542, at *6 (N.D. Cal. Apr. 25, 2025), the court

declined to exercise its discretion to order a jury trial where the defendant was charged with a

"non-novel, unremarkable misdemeanor" driving under the influence of intoxicants offense.[4]

Defendant argues that "[w]hen executive actions raise substantial fears about arbitrary

enforcement of criminal law, a court should feel empowered to exercise its discretion to allow a

trial by jury, thereby reaffirming community confidence in our justice system." Mot. Jury Trial 9,

ECF 44. Defendant "urges the Court to recognize that this is a time when the voice of the

community matters most," "[p]articularly in the District of Oregon where only months ago, the

court held that the President had 'acted outside the scope of [his] constitutional authority

conferred by Congress' when he federalized the Oregon National Guard to quell the very protests

at issue in this case." *Id.* at 13. Defendant contends "[t]here are indications that those charged

with enforcing the law are threatening core Constitutional protections." *Id.* She argues, "If there

were ever a moment to engage robust protections for citizens being prosecuted for offenses

arising from potentially constitutionally protected activity, it is now," and "[f]urther, if there

were ever a moment to allow members of the community to weigh the credibility of government

witnesses in executing the fact-finding function, it is now." *Id*. at 13–14.

Defendant's charges stem from incidents on July 20, 2025, July 28, 2025, and August 22,

2025, when it is alleged that she was standing on federal property at the ICE facility, ordered to

leave but refused to do so, and was subsequently arrested. There are no allegations that less lethal

munitions, such as pepper spray, were used on her or that she was injured during her arrests.[5]

---

[4] In *United States v. Beard*, 313 F. Supp. 844 (D. Minn. 1970), the court also exercised its discretion to allow a jury trial. The court recognized that such discretion included the court's "interest of the orderly administration of justice," and allowed a jury trial in a case involving 86 defendants but only if all defendants agreed not to assert individual defenses, i.e, they agreed to "stand or fall together." *Id*. at 846.

[5] The government argues that the use of multiple officers to arrest defendant on August 22, 2025, was justified because defendant previously told federal law enforcement agents that she was

There is nothing about these alleged facts, and defendant has not alleged any extenuating circumstances, to indicate her case is anything other than a run-of-the-mill prosecution under 41 C.F.R. § 102-74.385. There have been political protests at the Portland ICE facility for many years, and the alleged incidents could have just as easily occurred at any other time.[6]

Moreover, even accepting defendant's characterization that these are extraordinary times, the Ninth Circuit has observed that, historically, "[i]t has been a common practice to have bench trials for cases under" the identical predecessor statute to 41 C.F.R. § 102-74.385, and cited cases illustrating that bench trials were routinely conducted during other times of significant political unrest and, even, war. *Stansell*, 847 F.2d at 612 n.3 (citing *United States v. Bader,* 698 F.2d 553, 554 (1st. Cir. 1983) (involving post office sit-in protesting draft registration); *United States v. Shiel,* 611 F.2d 526, 527 (4th Cir. 1979) (involving protest at Pentagon to oppose nuclear arms); *United States v. Sachs,* 679 F.2d 1015, 1017 (1st Cir. 1982) (involving violation of 41 C.F.R. §§ 101–20.304 and 101–20.305 for "unreasonably obstruct[ing] the usual use of . . . elevators" during an anti-draft demonstration in a post office/courthouse); *United States v. Rankin,* 616 F.2d 1168, 1169 (10th Cir. 1980) (involving violation of 42 C.F.R. 101–20.305, which prohibits conduct that "impedes or disrupts the performance of official duties by Government employees," for protesting nuclear generating station); *United States v. Cassiagnol,* 420 F.2d 868, 871 (4th Cir. 1970) (involving violation of 41 C.F.R. § 101–19.304, which prohibited "unwarranted

---

going to shoot bows and arrows at them, was observed in the area of the ICE facility on August 10, 2025, with a bow on her back and on August 18, 2025, with a Micro Conversion Kit for a Glock 20/21 and/or some type of weapon that was black and pink in color.

[6] Defendant also points to *United States v. Griffin,* No. 3:25-cr-00474-AB-1, where the court exercised its discretion to grant a jury trial in a case arising from the ICE facility protests. That case is arguably distinguishable for reasons explained in the court's order denying a similar motion for jury trial in *United States v. Alexander*, 3:25-po-00391-YY, 3:25-po-00511-YY.

loitering . . . or assembly" and "unseemly or disorderly conduct," during an anti-war demonstration at the Pentagon)).

Here, there are no unusual or unique circumstances pertaining to defendant's charges or arrests. Even assuming that defendant's alleged offenses occurred during a backdrop of extraordinary events, her misdemeanor case involves no extraordinary events. In the absence of such circumstances, this court declines to exercise its discretion to extend the Sixth Amendment right to jury trial in defendant's case.

## ORDER

Defendant's Motion for Jury Trial (ECF 44) is denied.

DATED May 7, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

9 – OPINION AND ORDER